UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROSTAR WIRELESS GROUP, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>DOMINO'S PIZZA, INC.,<br><br>  Defendant. | Case No. 3:16-cv-05399-WHO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

**INTRODUCTION**

Prostar Wireless Group, LLC ("Prostar") asserts seven causes of action against Domino's Pizza, Inc. ("Domino's") for encouraging Prostar to develop a custom navigational software tool and promising approval for Prostar to rollout the tool to franchise owners ("Franchisees") worldwide. Its complaint alleges many facts concerning its collaboration with Domino's over several years and Domino's' ultimate refusal to implement the tool or compensate Prostar for its work. But Prostar has not plausibly alleged what its agreement with Domino's was, whether it had an ongoing relationship with Franchisees that was interfered with, or how it protected its alleged trade secrets. For those reasons, Domino's' motion is GRANTED and Prostar's complaint is DISMISSED WITH LEAVE TO AMEND within 20 days.

**BACKGROUND**

**I.   FACTUAL BACKGROUND**

Prostar is a wireless services group that provides standard communication options, as well as custom designed software and dynamic product development. Compl. ¶¶ 10–12 (Dkt. No. 1-1). In 2006 it learned, through meetings with multiple Domino's Franchisees, that Franchisees could use a product that provided GPS driver tracking and navigation. *Id.* ¶ 13. Over the next year, it

began developing a mobile phone based GPS delivery driver tracking and navigation system. It presented its preliminary product at a Domino's Franchisee Association ("DFA") convention in September 2007. *Id*. ¶¶ 15–16.

Following the convention and based on feedback, "Prostar worked to develop a solution that would provide driver dispatch and tracking, route optimization and navigation with turn by turn instructions, fuel location search, idle time reporting, time in and out of store reporting, credit card processing, electronic signature capture, and printing receipt issuance, among other features (the "Solution")." *Id*. ¶ 18. It completed a prototype in early 2009, and "attended DFA and [Domino's] World Wide Rally conventions in 2008, 2009, and 2010 to market its solution to the Franchisees, and accept feedback which it then integrated to improve the Solution." *Id*. ¶ 20.

In November 2010, Prostar presented the Solution to Domino's corporate representatives at Domino's headquarters ("Headquarters") in Ann Arbor, Michigan. *Id*. ¶ 22. The next day, Domino's representatives asked it to proceed with a proof of concept to be presented to the Domino's board of directors. *Id*. ¶ 23. It worked to incorporate specific requests from Domino's, including regarding the Solution device's appearance, coordinated with Domino's' preferred information technology provider, International Business Machines, Inc. ("IBM"), to ensure compatibility, and met legal requirements issued by Domino's' general counsel. *Id*. ¶ 27. It also worked to integrate the Solution into Domino's core international interface software, called "Pulse." *Id*. ¶¶ 28–29.

In January 2011, Domino's chief executive officer Patrick Doyle ("Doyle") and board of directors approved the Solution, and Prostar began testing it in Franchisee restaurants. *Id*. ¶ 30. By mid-2011, Prostar researched devices and selected the Kyocera Qualcomm Brew Domino s1310 ("s1310"), presented it to Domino's, and Domino's approved use of the device. *Id*. ¶ 31. Prostar then spent the next year developing and testing the Solution on the new device. *Id*. ¶ 32. During this time, Doyle visited a franchise and "personally approved of the Solution and encouraged Prostar to complete its development." *Id*. ¶ 33.

In or around May of 2012, Prostar presented the new Solution at the Domino's World Wide Rally convention and received positive feedback from Franchisees as well as confirmation

from Domino's executive Wayne Petersen that Domino's was fully committed to the Solution. *Id*. ¶ 34. Prostar continued redesigning the Solution and incorporating feedback from Domino's, including an instruction that the system should not be able to detect driver speed. *Id*. ¶ 37.

On June 13, 2012, Domino's approved the redesigned Solution in writing. *Id*. ¶ 38. Domino's agreed that the Solution would be rolled out worldwide with the next version of the Pulse software. *Id*. ¶ 39. By May 2013, the Solution was integrated into Pulse and included in version 3.751 released worldwide. *Id*. ¶ 41. Prostar is informed and believes that each subsequent version includes Prostar GPS integration, which provides the ability to interface with the Prostar Solution. *Id*. ¶ 42.

In October 2013, another Domino's representative, Matthew Walls, visited a testing location in California, reaffirmed Domino's commitment to the Solution, and requested additional adjustments, which Prostar subsequently integrated. *Id*. ¶¶ 44-45. In early 2014, Prostar and Domino's met at Headquarters to go over additional changes that "would allow [Domino's] to have more direct control over the support of the product and over the data gathered by the informational reporting features of the Solution." *Id*. ¶ 46. Domino's also asked that a version of the Solution be enabled for use on a standard Android or Apple smart phone. *Id.* The next month, Domino's directed Prostar to do a limited rollout at several franchises and assured Prostar that a global rollout would follow. *Id.* In August 2014, Domino's West Regional Director of Safety and Loss Prevention reviewed the Solution's numerous safety and security components. *Id*. ¶ 49.

On October 24, 2014, Domino's, by email, refused to approve the rollout and approved only additional testing. *Id.* ¶ 50.

In May 2015, Prostar, relying on "repeated and continuing promises from [Domino's]" entered into a relationship with Verizon that allowed it to offer a better price to Franchisees, but required it to make a financial commitment, comply with FCC guidelines, and complete a training program. *Id.* ¶ 52–53. Prompted by interest in the Solution from over 3,300 Domino's locations worldwide, Prostar developed marketing and promotional materials. *Id*. ¶¶ 54–55. In July 2015, members of Domino's marketing team visited a store and "informed Prostar that Pizza Hut was working on a driver tracking system and that it was imperative to beat Pizza Hut to the market."

1  *Id.* ¶ 56.  It offered to cover costs associated with the Solution's rollout with the multi-million

2  dollar pool of funds generated through monthly payments by Franchisees (the Domino's National

3  Advertising Fund).  *Id.*  During this meeting, Domino's asked Prostar to travel back to

4  headquarters to discuss immediate rollout in San Diego, followed by national and international

5  rollout.  *Id.* ¶ 57.

6        At the Headquarters meeting, Domino's asked Prostar to prepare a complete deployment

7  plan.  *Id*. ¶ 58.  Prostar presented this plan in early August 2015.  *Id.*  Yet by the end of August,

8  Domino's informed Prostar that it "would be developing its own solution and would pay Prostar

9  nothing."  *Id.* ¶ 60.  Prostar alleges that "the July 2015 meeting was a sham in order to allow

10  [Domino's] to obtain as much information as possible about the comprehensive Solution and

11  Prostar's plans for integration into locations worldwide."  *Id.* ¶ 61.

12        In October 2015, Domino's Program Manager of Digital Experience Aaron Nilsson

13  contacted Prostar to ask additional questions about the rollout and offered "to revisit the issues" of

14  whether Prostar would be compensated for its contributions.  *Id.* ¶ 62.  Prostar agreed to answer

15  Nillson's questions and provided a 57-page detailed description of the Solution and complete

16  nationwide rollout plan.  *Id.* ¶¶ 62–63.  Then Domino's, again, refused to compensate Prostar and

17  by December, ceased all communications.  *Id.* ¶¶ 64–65.  Prostar believes that Domino's is

18  "developing, testing and using a system that is identical, or functionally identical, to the Solution

19  system developed by Prostar over the prior ten years and integrated into [Domino's]'s Pulse

20  system."  *Id.* ¶ 67.

21  **II.  PROCEDURAL BACKGROUND**

22        On August 8, 2016, Prostar filed this action in California Superior Court, County of San

23  Mateo.  NOR ¶ 2 (Dkt. No. 1).  Domino's removed it on September 21, 2016.  *See* NOR at 6.  The

24  complaint alleges seven causes of action against Domino's: (1) breach of fiduciary duty, Compl.

25  ¶¶ 68–81; (2) intentional interference with prospective economic relations, *id*. ¶¶ 82–89; (3)

26  negligent interference with prospective economic relations, *id.* ¶¶ 90–97; (4) misappropriation of

27  trade secrets (Civil Code § 3426 et seq.) *id.* ¶¶ 98–105; (5) breach of implied in fact contract, *id.*

28  ¶¶ 106–111; (6) breach of the covenant of good faith and fair dealing, *id.* ¶¶ 112–118; (7) unfair

1  competition under Cal. Bus. & Prof. Code § 17200, et. seq., *id.* ¶¶ 119–124.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake. Under FRCP 9(b), to state a claim for fraud, a party must plead with particularity the circumstances constituting the fraud, and the allegations must be

5

specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

## DISCUSSION

### I. PROSTAR'S AGREEMENT-BASED CLAIMS

Prostar alleges three agreement-based claims stemming from a joint venture between the parties: (1) breach of fiduciary duty; (2) breach of an implied in fact contract; and (3) breach of the covenant of good faith and fair dealing. Compl. ¶¶ 2, 69, 72, 77. It has failed to plausibly allege the agreement that must underlie these claims.

#### A. Breach of Fiduciary Duty Depends on a Joint Venture

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (Cal. Ct. App. 1995). Prostar's breach of fiduciary duty claim turns on the existence of a joint venture agreement, because "a joint venturer owes fiduciary duties to his coventurers." *Galardi v. State Bar*, 43 Cal. 3d 683, 691 (1987).

"The essential element of a joint venture is an undertaking by two or more persons to carry out a single business enterprise jointly for profit." *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 525 (2008). "A joint venture agreement may be informal or oral," *id.*, but "[i]t requires an agreement under which the parties have (1) a joint interest in a common business, (2) an understanding that profits and losses will be shared, and (3) a right to joint control." *Ramirez v. Long Beach Unified Sch. Dist.*, 105 Cal. App. 4th 182 (2002). Prostar alleges that the parties entered into a joint venture to develop the Solution. Compl. ¶ 2. Domino's argues that Prostar includes conclusory allegations that a joint venture existed and fails to adequately plead both the sharing of profits and losses and joint control.

Prostar alleges that it would profit from selling the Solution to Franchisees, and Domino's

6

would profit from the Solution's real time tracking capabilities, leading to improved customer service and potentially increased sales.[1] Compl. ¶¶ 70–71. But as Domino's argues, "it is not enough for the parties to receive positive benefits and 'profits' that might flow indirectly from a business arrangement—true joint venturers must agree to share in the actual profits and losses of the joint venture itself." Reply at 2. An "[a]greement to share in the profits and losses of the enterprise is [] essential to a joint venture, although there is some authority to the effect that the sharing of losses is not necessary." *Simmons v. Ware*, 213 Cal. App. 4th 1035, 1054 (2013).

Prostar's allegations that Domino's "planned to profit from the venture by being the first in the market to provide real time tracking of pizza deliveries and providing improved customer services … potentially increas[ing] sales" is too general. Compl. ¶ 71. Prostar contends that the joint venture consisted of the development and rollout of the Solution, Compl. ¶¶ 2, 25–28, not just the "devices, software, and service contracts." *Id.* at ¶ 70; *see* Reply at 2. While I can reasonably infer that potential profits from increased efficiency and customer satisfaction may be derivative of the Solution, this is not synonymous with an agreement to share *joint* profits. Prostar has failed to adequately plead sharing of profits and losses.[2]

### B. Implied-In-Fact Contract

"The elements of a cause of action for breach of an express or implied contract are the same. The elements are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages." *Rubio v. U.S. Bank N.A.*, No. C 13-05752 LB, 2014 WL 1318631, at *10 (N.D. Cal. Apr. 1, 2014) (citation omitted). Domino's argues that Prostar's breach of contract claim fails because Prostar "does not describe the 'bargained-for exchange' at the core of the implied contract, nor does it illuminate any

---

[1] In its Opposition, Prostar footnoted a new allegation that "the parties planned to share in revenues generated directly from the Solution system…. Domino's would provide first-level customer service to franchisees for issues with the Solution and Prostar would pass on a portion of the monthly service fees paid by franchisees on to Domino's." Opp'n at 5 n.1. But Prostar did not even mention this during the hearing. To be considered on the motion to dismiss, this allegation must be properly pleaded in the Complaint.

[2] I disagree with Domino's argument that Prostar failed to plausibly plead joint control. *See* Compl. ¶¶24, 27, 30–31, 37–39, 41, 43–44, 46–47, 49–50, 56–57, 69, 75.

1  contractual terms." Mot. at 8 (citing *Brod v. Sioux Honey Ass'n Co-op.*, 895 F. Supp. 2d 972, 982
2  n.7, 12-1322-EMC (N.D. Cal. 2012). It insists that "Prostar's vague and conclusory allegations
3  that Domino's said it was 'fully committed' to the product or otherwise provided positive
4  feedback during Prostar's development process fail to show that Domino's manifested an intent to
5  enter a contract." Mot. at 9.

6    "An implied contract is one, the existence and terms of which are manifested by conduct."
7  Cal. Civ. Code § 1621. "[A] contract implied in fact consists of obligations arising from a mutual
8  agreement and intent to promise where the agreement and promise have not been expressed in
9  words." *Retired Employees Assn. of Orange Cty., Inc. v. Cty. of Orange*, 52 Cal. 4th 1171, 1178
10 (2011) (internal quotation marks and citation omitted).

11   To demonstrate a bargained-for-exchange, Prostar points to some of the same facts
12 establishing joint control of the enterprise, as well as Domino's purported promise to "provide
13 Prostar with the support needed to develop a comprehensive delivery system that would be
14 optimal for all Franchisees," in exchange for Prostar's commitment to "focus[] exclusively on
15 developing the Solution for [Domino's] business… ." Compl. ¶ 25–26. Further, "Domino's
16 made clear to [it] that if it complied with Domino's requirements, Domino's would provide
17 support for the development of the Solution and that when completed, the Solution would be made
18 available for sale to Franchisees worldwide." Opp'n at 7 (citing Compl. ¶ 25).

19   As Domino's points out:

> The claim that Domino's had bound itself to approve a product that Prostar readily admits was undergoing revision and testing is facially implausible. Prostar pleads no facts demonstrating the point at which this alleged contract was formed. Likewise, Prostar pleads no facts demonstrating what "requirements" Prostar was contractually obligated to meet or what consideration Domino's was entitled to receive in return for its purported contractual performance.

Reply at 4. In the absence of allegations plausibly establishing Domino's' intent to promise, Prostar fails to allege the existence of a contract. *See People v. Randono*, 32 Cal. App. 3d 164, 175, 108 Cal. Rptr. 326, 333 (Ct. App. 1973) ("California courts follow the objective theory of mutual assent under which the terms of a contract are established, not by the undisclosed intention

8

of the promisor, but by such words or conduct as justify the promisee in understanding that the promisor intended to make a promise.").

### C. Breach of Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing inheres in every contract. Because Prostar fails to adequately allege the existence of an implied-in-fact contract, its breach of the covenant of good faith and fair dealing claim must fail as well. *Zody v. Microsoft Corp.*, No. 12-CV-00942-YGR, 2012 WL 1747844, at *4 (N.D. Cal. May 16, 2012) ("Thus, because the Court holds that the breach of contract claim must be dismissed, the implied covenant claim must follow suit.")

## II. TORT CLAIMS

In addition to agreement-based claims, Prostar accuses Domino's of tortious conduct for intentional and negligent interference with prospective economic advantage.

> The elements of intentional interference with prospective economic advantage have been stated as follows: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–22 (1996) (internal quotation marks omitted). "[T]he third element also requires a plaintiff to plead intentional *wrongful* acts on the part of the defendant designed to disrupt the relationship." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003) (emphasis in original). "The tort of negligent interference with prospective business advantage has many of the same elements[,]" *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1118 (C.D. Cal. 2015), and "also requires an independent wrongful act," but it "need not be willful." *Integrated Storage Consulting Servs., Inc. v. Netapp, Inc.*, No. 5:12-CV-06209-EJD, 2016 WL 3648716, at *8 (N.D. Cal. July 7, 2016).

Domino's argues that Prostar's claims must be dismissed because it failed to establish: (1) a wrongful act; (2) that Domino's was a third party to the economic relationship between Prostar and Franchisees; and (3) that Prostar had an existing relationship with the Franchisees. Mot. at

11–14. The first two arguments are not well taken; one can infer reasonably the wrongful act from the complaint's allegations, and it is conceivable based on the pleadings that Domino's is a separate entity from the Franchisees. However, the third argument is correct.

"An allegation of interference with a *potential* customer is too speculative to state a claim for interference with prospective economic advantage." *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1106 (C.D. Cal. 2002). "Rather, an expectation of economic advantage based on an ongoing economic relationship is required." *Id*. Prostar fails to address Domino's' challenge directly, stating only "Franchisees ... were ready, willing, and able to implement the Solution in there [sic] restaurants." Opp'n at 12 (citing Compl. ¶¶ 13–20, 54, 84). This allegation is insufficient to rise to the level of an "existing relationship." Accordingly, Domino's' motion to dismiss Prostar's interference claims is GRANTED.

### III. UNFAIR COMPETITION

Domino's moves to dismiss Prostar's claim under California Business and Professions Code § 17200, et seq. ("UCL"), arguing that Prostar fails to allege both unfair acts or practices and fraudulent acts or practices. Mot. at 14. California's unfair competition law defines "unfair competition" in part as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "A plaintiff need only meet one of [the] three criteria to state a claim for unfair competition." *Mountjoy v. Bank of Am. Home Loans*, No. 2:15-cv-02204-TLN-AC, 2016 WL 4192416, at *9 (E.D. Cal. Aug. 9, 2016). "To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Prakashpalan v. Engstrom, Lipscomb and Lack*, 223 Cal. App. 4th 1105, 1133 (2014) ("unlawful practices are practices 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory or court-made.'")

Inconsistencies between Prostar's complaint and opposition make it difficult to discern its theory of liability under the UCL. As Domino's highlights, the complaint explicitly cites "fraudulent and unfair business acts," Compl. ¶ 120, but the Opposition focuses solely on the unlawful prong, urging that "Prostar's allegations of Domino's' breach of fiduciary duty is sufficient... to maintain a claim under the unlawful prong of the UCL." Opp'n at 12. "A common

1  law violation such as breach of contract is insufficient" to amount to a violation of the unlawful

2  prong of the UCL.  *Shroyer v. New Cingular Wireless Servs.*, Inc., 622 F.3d 1035, 1044 (9th Cir.

3  2010).  Since a breach of fiduciary duty is a common law claim, Prostar's UCL claim cannot stand

4  on this ground.  Accordingly, Domino's' motion to dismiss the UCL claim is GRANTED.  On

5  amendment, Prostar should clarify the grounds and theory underlying its UCL claim.

## IV. MISAPPROPRIATION OF TRADE SECRETS

Domino's moves to dismiss Prostar's claim for trade secret misappropriation on grounds that Prostar fails to adequately plead that it owned a trade secret eligible for CUTSA protection. Mot. at 18.  "To state a cause of action for misappropriation of a trade secret under California law, a plaintiff must plead that (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff."  *Aqua Connect, Inc. v.Code Rebel, LLC*, 2012 WL 469737, at *2 (C.D. Cal. Feb. 13, 2012) (citing Cal. Civil Code 3426.1).

Information can only be protected as a trade secret if it is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civil Code 3426.1(d)(2). "Reasonable efforts" can include advising employees of the existence of a trade secret, limiting access to the information on a "need to know basis," *Courtesy Temporary Service, Inc. v. Camacho,* 222 Cal. App. 3d 1278, 1288, 272 Cal. Rptr. 352 (1990), requiring employees to sign confidentiality agreements, *MAI Systems Corp. v. Peak Computer,* 991 F.2d 511, 521 (9th Cir. 1993), and keeping secret documents under lock, *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1253 (N.D. Cal. 1995).

Domino's argues that Prostar's "single, unsupported allegation that it did not widely share information is insufficient to plead the 'reasonableness' efforts the CUTSA requires." Mot. at 18. Prostar alleges that it undertook "reasonable efforts to maintain [the trade secrets'] secrecy by, for example, not sharing the information with anyone except those necessary to allow for the continued development and eventual implementation of the Solution System." Compl. ¶ 100.  It admits that it presented the Solution at various conventions over the years and tested the Solution at Franchisee stores, but it "did not publicly share the underlying technology and work product

1 created during the 10 years it spent developing the solution." Opp'n at 13. While its public

2 disclosure of the Solution does not necessarily waive trade secret protection, it still must meet the

3 pleading requirements to demonstrate that it took reasonable efforts to maintain secrecy. As it

4 stands, the Complaint's allegation that "Prostar has subjected the ... Solution ... to reasonable

5 efforts to maintain [its] secrecy by, for example, not sharing the information with anyone except

6 those necessary to allow for the continued development and eventual implementation of the

7 Solution system," Compl. ¶ 100, amounts to a "formulaic recitation of the elements." *See Iqbal*,

8 556 U.S. at 681. Prostar fails to include any authority supporting its position that "not sharing the

9 information" alone is sufficient to show reasonable efforts to maintain secrecy. Prostar has failed

10 to demonstrate the reasonable efforts necessary to maintain its claim for misappropriation of trade

11 secrets. Domino's' motion to dismiss is GRANTED.

## CONCLUSION

In accordance with the foregoing, Domino's' motion to dismiss is GRANTED, and Prostar's complaint is DISMISSED WITH LEAVE TO AMEND. Prostar shall file an amended complaint within 20 days.

**IT IS SO ORDERED**.

Dated: January 6, 2017



WILLIAM H. ORRICK
United States District Judge