UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROSTAR WIRELESS GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DOMINO'S PIZZA, INC., <br><br> Defendant. | Case No. 3:16-cv-05399-WHO <br><br> **ORDER ON DISCOVERY DISPUTES** <br> Re: Dkt. Nos. 61, 62 |

In accordance with the last scheduling order (Dkt. No. 60), the parties submitted two discovery disputes on July 13, 2018 (Dkt. Nos. 61, 62). The first concerns whether Prostar statutorily waived the attorney-client privilege with respect to communications concerning the parties' 2015 Non-Disclosure Agreement (NDA) and other purported contracts between Prostar, IBM, and Domino's ("Joint St. No. 1")(Dkt. No. 1"), and the second relates to Prostar's Requests for Production Numbers 22, 23, and 33 ("Joint St. No. 2")(Dkt. No. 62).

## I. WHETHER PROSTAR STATUTORILY WAIVED ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO CERTAIN COMMUNICATIONS

When federal courts exercise diversity jurisdiction over a case, "questions of privilege are controlled by state law." *In re California Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); *see* Fed. R. Evid. 501. California law provides that certain privileges, including the lawyer-client privilege, are "waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." Cal. Evid. Code § 912(a). The rule does not require that "*all* of a communication between attorney and client must be disclosed before a waiver occurs," in part because "it makes no sense to hold that no waiver occurs when

what is disclosed is the most important part of the privileged communication, but not the details." *Electro Sci. Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D. Cal. 1997). "[A] sophisticated party who intentionally discloses the most significant part of an otherwise privileged communication, in an act calculated to advance that party's commercial interests, cannot establish, as the law would require, that the party reasonably believed that it would be able to preserve the confidentiality of the other parts of that communication." *Id*.

But the federal rule governing the "[l]imitations on [w]aiver" of the attorney-client privilege "applies even if state law provides the rule of decision." *See* Fed. R. Evid. 502(f). Domino's seizes on the federal rule in an attempt to expand the scope of waiver under the California rule. The federal rule provides that "[w]hen a disclosure is made in a federal proceeding … the waiver extends to an undisclosed communication or information … only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a); *see also Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)("[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.").

Domino's argues that Prostar's owner Joe Olsen and legal counsel Allan Cory "divulged significant content of attorney-client communications" concerning the 2015 NDA in their respective depositions. *See* Joint St. No. 1 at 2 (citing deposition testimony from Olsen and Cory). Domino's cites to Olsen's testimony regarding Cory's advice concerning the NDA's liquidated damages provision and Cory's testimony that Olsen asked him to reply "immediately," which purportedly resulted in a "rush job" review. *Id*. It further cites to Cory's testimony about information communicated to him by Olsen concerning meetings between Prostar and Domino's, including Olsen's assertion that "we've got a deal." *Id*. at 3 (citing Cory deposition testimony). It insists that these disclosures warrant waiver of the attorney-client privilege with respect to documents regarding the 2015 NDA and other contracts with Domino's and/or IBM, which Prostar is currently withholding on the basis of attorney-client privilege.

The waiver sought by Domino's is far too expansive. Of the examples upon which it relied, only the testimony concerning the liquidated damages provision entails the contents of purportedly protected communications. While some of the other comments appear to be protected by the privilege, they do not go to significant issues and Prostar has represented that it will not rely on Cory's testimony. So the question is whether these disclosures constitute a "significant part" of a protected communication thereby triggering statutory waiver.[1] The answer is no.

In *Southern Cal. Gas Co. v. Public Utilities Com.*, 50 Cal. 3d 31 (1990), the California Supreme Court decided that "revealing the fact *and* the conclusion of a communication" did not qualify as a statutory waiver of the attorney-client privilege under California law. *Id*. at 46–47; *id*. at 49 ("[W]e conclude that SoCalGas's disclosure of the fact of its attorneys' review of the Getty agreement and the conclusions arrived at by its attorneys to members of the commission was not an express waiver of the attorney-client privilege."). The testimony regarding the NDA's liquidated damages provision revealed "the fact and the conclusion of a communication," but Domino's has not established that it constitutes a significant part of the entire *communication* such that Prostar has waived the privilege with respect to that communication.

To the extent that Domino's relies on the federal rule to expand the scope of Prostar's purported waiver beyond a particular communication to ensnare an entire "subject matter," I am not convinced that "subject matter" should be construed as broadly as Domino's would like. *See Nemirofsky v. Seok Ki Kim*, 523 F. Supp. 2d 998, 1001 (N.D. Cal. 2007), *as amended* (Nov. 24, 2007)(noting that confidential communication are "zealously protected" and are "worthy of maximum protection"). For this reason, I will consider the "subject matter" for purposes of an intentional waiver stemming from Olsen's testimony about Cory's advice on the liquidated damages provision of the NDA to be limited to the liquidated damages provision of the NDA. If

---

[1] It does not appear that Domino's is arguing for implied waiver as well, *see* Joint St. No. 1 at 1 (indicating that "Prostar has statutorily waived the attorney-client privilege"), but even if it is, implied waiver does not apply since Prostar will not be relying on Cory's testimony at trial. *See Transamerica Title Ins. Co. v. Superior Court*, 188 Cal. App. 3d 1047, 1053 (Ct. App. 1987)("[I]mplied waivers are limited to situations where the client has placed into issue the decisions, conclusions, and mental state of the attorney who will be called as a witness to prove such matters."); Joint St. No. 1 at 5 ("Prostar did not proactively advance Mr. Cory, Prostar's legal counsel, as a witness in this case and has no intention of relying on his testimony.").

Prostar is withholding any documents within this narrow subject matter, it should produce them.

## II. PROSTAR'S RFP NOS. 22, 23, AND 33 (DKT. NO. 62)

### A. RFP Nos. 22 and 23

These requests pertain to "[a]ll internal communications within Domino's relating to any GPS, driver, and/or order tracking product from January of 2010 through the present[,]" and "[a]ll documents relating to the development of any GPS, driver, and order tracking product for Domino's from January of 2010 through the present." Requests 22 and 23 (Ex. A, Prostar's Request for Production of Documents, Set One).

Domino's initially objected to producing any documentation of its own system, but following a meet and confer in May 2018, agreed to produce documents using agreed upon search terms and agreed upon custodians. Joint St. No. 2 at 1. Apparently, "[t]he handful of communications produced were only those that directly referenced Prostar or its sister company Teldan[,]" but Domino's withheld other communications concerning the development of its delivery driver tracking system ("Domino's Solution") on the basis that they did not "relate" to communications and documents concerning Prostar's system. *Id*. at 1–2.

Prostar highlights produced emails and testimony from Domino's principal software developer that Prostar's technical documentation was transmitted to the team developing Domino's solution to support its contention that it is entitled to supplemental production of the following:

> (1) All non-privileged documents, which hit on the search terms and are from all custodians and document sources previously agreed upon by the parties, related to any driver tracking technology, notwithstanding whether they mention Prostar, or appear to relate to Prostar or its technology, including, all non-privileged documents related to Ms. Anderzak and Mr. Kennedy's work on the development of the Domino's Solution, including all documents related, in any way, to their receipt and use of Prostar's technological documentation; and
> (2) Any unproduced documents sufficient to describe and identify the technology used in the DXP and/or Domino's autonomous car projects.

Joint St. No. 2 at 2.

Domino's indicates that "Prostar voluntarily proposed and entered into" an agreement that "Domino's most recent production would satisfy its discovery obligations." *Id*. at 3. According to

Domino's, in the email exchange, Prostar agreed that the supplementary production "will satisfy Domino's document production obligations in this matter, and, without prejudice to Prostar's ability to seek discrete, specifically identified documents of which it may become aware, Prostar will not move to compel on the basis of the custodians and/or search terms utilized in this matter." Joint St. No. 2 at 4 (quoting May 25, 2018 emails between J. Pierson and M. Nash). Domino's indicates that it relied on Prostar's representations, produced the agreed upon documents, and "produced for depositions the leader of its driver tracking project, Kelly Garcia; its lead developer, Jason McMann; and the project manager, Aaron Nilsson[,]" without restricting the scope of these day-long depositions.

The precise timing of the email agreement (May 25, 2018) and the produced emails (May 2018) that Prostar relies on as evidence that its technical documentation was transmitted to the Domino's Solution development team is unclear, but Domino's indicates that Prostar knew since the deposition of its 30(b)(6) witness in mid-March that Domino's Solution "leverages the API software code that Domino's wrote and first employed in its point-of-sale system when testing Prostar's solution." Joint St. No. 2 at 4. This is purportedly the "technical documentation" that Prostar relies on to support its claim to supplemental production. But even if it knew that limited piece of information, the McMann deposition testimony in June seems to suggest that Prostar should be entitled to additional production, at least with respect to the first category listed above.

Accordingly, Domino's should produce the following:
> All non-privileged documents, which hit on the search terms and are from all custodians and document sources previously agreed upon by the parties, related to any driver tracking technology, notwithstanding whether they mention Prostar, or appear to relate to Prostar or its technology, including, all non-privileged documents related to Ms. Anderzak and Mr. Kennedy's work on the development of the Domino's Solution, including all documents related, in any way, to their receipt and use of Prostar's technological documentation.

Prostar has not convinced me that its second request is warranted.

Prostar also requests an additional day of deposition "to address the documents that have not yet been produced." Joint St. No. 2 at 3. I will allow one more day for it to depose Domino's on documents that have yet to be produced.

## B. RFP No. 33

Prostar's Request 33 sought "items sufficient to demonstrate the functionality and user interface of the current delivery driver tracking system being tested by Domino's in areas including but not limited to the San Diego market." Prostar's Request for Production of Documents, Set Three (Ex. C). Prostar indicated that it "understands production of such things would be difficult and is willing to travel to a store where the system is in use and inspect it onsite without removal of any items." *Id*. In response, Domino's produced "screen shots and other documentation created during the development of the system[,]" but "has not made any items related to its driver tracking product available for inspection, including the cell phone devices being used, or the terminals used at the franchise locations." Joint St. No. 2 at 3.

Domino's responds that Prostar has not explained why the documents produced by Domino's are insufficient to meet its request, and its last minute focus on cell phone devices and terminals amount to "post hoc rationalization." It also emphasizes that its witnesses answered questions on these topics.

Prostar provides no justification for seeking this information so late in the discovery process. Its request is denied.

## CONCLUSION

In accordance with the forgoing, the parties are ordered to produce the remaining documents as soon as reasonably possible, and no later than August 17, 2018. If the additional day of deposition allowed by this Order cannot be accomplished by the current fact discovery deadline, the parties may conduct the deposition as soon as practicable after August 17, 2018. *See* Stipulation and Order regarding Modification of Scheduling Order (Dkt. No. 60).

**IT IS SO ORDERED.**

Dated: July 18, 2018

William H. Orrick
United States District Judge